UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIAMOND CHEMICAL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> AKZO NOBEL CHEMICALS B.V., *et al.*, <br><br> Defendants. | Civil Action No. 01-2118 (CKK) |
| DIAMOND CHEMICAL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ATOFINA CHEMICALS, INC., *et al.*, <br><br> Defendants. | Civil Action No. 02-1018 (CKK) |

**MEMORANDUM OPINION**
(July 10, 2007)

Currently pending before the Court is the portion of the Motion to Distribute brought by Class Plaintiff, Diamond Chemical Company, Inc. ("Class Plaintiff") that seeks a *cy pres* distribution of the undistributed funds derived from the settlement of these actions (the "Remaining Settlement Fund") to a newly created endowment fund that would be used to develop a Center for Competition Law (the "Center") at The George Washington University Law School (hereinafter "GW Law School"). Class Plaintiff initially filed its Motion to Distribute on February 12, 2007, seeking the *cy pres* distribution, as well as the distribution of settlement proceeds to a final group of class claimants (the "Supplemental Claimants") and the payment of

certain unpaid fees and expenses to the Claims Administrator, Heffler, Radetich & Saitta L.L.P. (the "Claims Administrator"). Defendants[1] opposed Class Plaintiff's motion insofar as it sought *cy pres* distribution of the entire Remaining Settlement Fund, and cross-moved for an order authorizing a refund to Defendants of half of the Remaining Settlement Fund. In its May 14, 2007 Memorandum Opinion and Order, the Court denied Defendants' Cross-Motion for Partial Refund and granted-in-part Class Plaintiff's Motion to Distribute, authorizing the distribution of settlement funds to the Supplemental Claimants and the payment of the Claims Administrator's additional fees and expenses. The Court held in abeyance that portion of Class Plaintiff's Motion to Distribute that sought authorization of the proposed *cy pres* distribution, and ordered Class Plaintiff to submit additional briefing as to the appropriateness of its proposed *cy pres* recipient.

Class Plaintiff submitted its supplemental Memorandum in Support of its Proposed *Cy Pres* Award Recipient (hereinafter "Cl. Pl.'s Mem. re: *Cy Pres* Award") on June 4, 2007, along with a number of declarations and exhibits. On June 25, 2007, Defendants filed their Reply to Class Plaintiff's Supplemental Memorandum, and on July 6, 2007, Class Plaintiff moved for leave to file a reply regarding its proposed *cy pres* recipient, and provided the Court with Class Plaintiff's proposed Reply. The Court shall grant Class Plaintiff's Motion for Leave to File Reply, and has considered Class Plaintiff's Reply in further support of its proposed *cy pres* recipient. Upon a searching review the foregoing filings, the exhibits attached thereto, and the relevant case law, and in an exercise of the Court's discretion, the Court shall grant Class

---

[1] The term "Defendants" collectively refers to Akzo Nobel Chemical B.V., Akzo Nobel Functional Chemicals LLC, Atofina Chemicals, Inc. n/k/a Arkema Inc., and Elf Atochem S.A., and Atofina S.A. n/k/a Arkema, Clariant AG, Clariant International AG, Clariant Corporation, Hoechst AG, Hoechst Celanese Corp., CNA Holdings, Inc., and Aventis SA n/k/a Sanofi-Aventis. Defs' Cross-Mot. at 1 n.1.

Plaintiff's Motion to Distribute insofar as it seeks distribution of the Remaining Settlement Fund to a newly created endowment fund that would be used to develop a Center for Competition Law at GW Law School.

## DISCUSSION

The factual background of these actions is set forth in considerable detail in this Court's May 14, 2007 Memorandum Opinion, which the Court hereby incorporates by reference. *See Diamond Chem. Co. v. Akzo Nobel Chems B.V.*, Civil Action No. 01-2118; *Diamond Chem. Co. v. Atofina Chems, Inc.*, Civil Action No. 02-1018 (D.D.C. May 14, 2007) (hereinafter "Mem. Op."). Pursuant to the Court's request for additional briefing, Class Plaintiff has provided the Court with additional information regarding its proposed *cy pres* recipient of the Remaining Settlement Fund[2] – an endowment fund that would be used to develop a Center for Competition Law at GW Law School (the "Center") – as well as additional argument that authorizing the proposed *cy pres* award to Center is the most appropriate exercise of the Court's broad equitable powers. *See generally* Cl. Pl.'s Mem. re: *Cy Pres* Award. Specifically, Class Plaintiff asserts that the proposed *cy pres* award "has a much closer and stronger nexus to the underlying litigation than many other awards that have been approved by courts" in similar situations, and that the "proposed award will benefit the plaintiff class and similarly situated parties by creating a Center that will help protect them from future antitrust violations and violations of other competition laws." *Id.* at 5.

Defendants respond that Class Plaintiff's *cy pres* proposal is inappropriate because (1) it

---

[2] The Court understands that the Remaining Settlement Fund totals approximately $5,113,285.10, after the distributions authorized by the Court's May 14, 2007 Memorandum Opinion and Order. *See* Cl. Pl.'s Mem. re: Mot. to Distr. at 6.

does not correspond to the geographical scope of this case; (2) it is disconnected from the subject matter of this case, which Defendants describe as specialty chemicals; and (3) the Center is unnecessary because there are substantial public and private resources already dedicated to antitrust research and enforcement. *See generally* Defs' Reply to Cl.'s Pl.'s Supp. Mem. in Support of its Proposed *Cy Pres* Recipient (hereinafter "Defs' Reply"). Class Plaintiff addresses each of these arguments in its Reply in further support of its proposed *cy pres* recipient.

As discussed in the Court's May 14, 2007 Memorandum Opinion, the *cy pres* doctrine allows unclaimed settlement funds to be distributed to the "next best" use, that is, for the indirect benefit of the class and the non-claiming class members, when plaintiffs cannot be compensated individually. *Dem. Cent. Comm. of the Dist. of Columbia v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 455 (D.C. Cir. 1996);[3] *see also* 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.20 (4th ed. 2002). Moreover, a variety of courts have utilized the *cy pres* doctrine in distributing unclaimed settlement funds from antitrust actions. *See e.g.*, *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1395 (N.D.Ga. 2001) (hereinafter "*Motorsports Merch.*") (authorizing *cy pres* distribution to nine charities of settlement funds in action alleging conspiracy to fix prices on NASCAR race souvenirs); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D.Pa. 2005) (rejecting *cy pres* distribution to University of Pennsylvania law school and authorizing distribution to NFL Youth Education Town Centers of settlement funds in action regarding bundled NFL programming).

---

[3] As the D.C. Circuit recognized, "the term '*cy pres*' is derived from the Norman French expression *cy pres comme possible*, which means 'as near as possible[,]'" and is a rule of construction used to preserve testamentary charitable gifts that otherwise would fail. *Dem. Cent. Comm.*, 84 F.3d at 455 n.1.

In applying *cy pres* principles, it is appropriate for a court to consider "(1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz*, 362 F. Supp. 2d at 576 (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)). Furthermore, "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1307 (9th Cir. 1990) (citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984)). And, while the "use of funds for purposes closely related to [the underlying action] is still the best cy pres application, the doctrine of cy pres and the courts' broad equitable powers now permit the use of funds for other public interest purposes by educational, charitable, and other public service organizations." *Motorsports Merch.*, 160 F. Supp. 2d at 1394 (quoting *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 358 (S.D.N.Y. 1999)).

Class Plaintiff argues that its proposed *cy pres* award to fund the Center is closely related to the underlying action and would directly benefit the plaintiff class in this case. Specifically, Class Plaintiff notes that the "plaintiff class in this case was harmed by an international anticompetitive conspiracy to fix prices for the sale of sodium monochloracetate and monochloroacetic acid in the United States and elsewhere, in violation of Section 1 of the Sherman Act." Cl. Pl.'s Mem. re: *Cy Pres* Award at 9. Class Plaintiff asserts that the proposed Center would "focus particularly on challenges posed by globalization to the private enforcement of competition law and effective means to enforce competition laws against international and multinational actors who harm U.S. consumers, as occurred in this case." *Id.* at 6.

In addition to arguing about the hypothetical virtues of the proposed Center, Class

Plaintiff provides the Court with significant concrete detail as to both the mission and the nascent plans for the proposed Center. Class Plaintiff argues that the Center will be well-poised to succeed in its mission due to its location in Washington, D.C., the track record of success of other Centers at GW Law School, GW Law School's commitment to educating on issues relating to the enforcement of competition laws, and the fact that GW Law School has a number of scholars in the field of antitrust and competition law who could participate in the activities of the Center. *See id.* at 6-9.[4] This concrete detail satisfies the Court that Class Plaintiff has devoted significant attention to conceiving of and designing the proposed Center, as well as to securing commitments from GW Law School so as to increase the Center's likelihood of success. The Court particularly notes that in his Declaration, GW Law School Dean Frederick M. Lawrence avers that if the Court approves Class Plaintiff's proposed *cy pres* award, GW Law School "is committed to providing additional financial, faculty, personnel, administrative support, and other resources that are needed fully to effectuate the mission of the Center for Competition Law. This will likely include additional fundraising by [GW Law School] to continue to build the endowment." Cl. Pl. Mem. re: *Cy Pres* Award, Ex. A (6/4/07 Lawrence Decl.) ¶ 4.

Class Plaintiff also directly responds to this Court's remark in its May 14, 2007

---

[4] Class Plaintiff supports these assertions with the sworn Declarations of Frederick M. Lawrence, Dean and Robert Kramer Research Professor of Law at GW Law School, and Alexander Layton, a barrister and Queen's Counsel in independent practice at the English Bar who organized a conference sponsored by GW Law School on "Competition Policy in a Globalized Economy" in 2000. *See* Cl. Pl.'s Mem. re: *Cy Pres* Award, Exs. A (6/4/07 Lawrence Decl.) and B (6/1/07 Layton Decl.). In addition, Class Plaintiff provides the Court with the curricula vitae of three GW Law School Professors – William E. Kovacic, Richard J. Pierce, Jr., and Edward T. Swaine – who work in the field of antitrust and competition law and could participate in the activities of the proposed Center. *See* Cl. Pl.'s Mem. re: *Cy Pres* Award, Ex. C (6/4/07 Hausfeld Decl.) at Exs. 1-3.

Memorandum Opinion that "[g]iven the fact that membership in the class was limited to U.S. consumers, the 'foreign' aspect of the mission of [the Endowment Fund] seems especially divorced from benefitting any non-claiming class member." Mem. Op. at 14 (citing Defs' Reply Mem. re: Mot. to Distribute at 9). Class Plaintiff claims that "to the extent that some activities of the Center would involve promoting enforcement of competition laws outside the U.S., these activities would also inure to the benefit of U.S. consumers by deterring the formation of international cartels that harm U.S. consumers." Cl. Pl.'s Mem. re: *Cy Pres* Award at 11. Relying on a number of published studies, Class Plaintiff posits that anticompetitive cartels have become increasingly international as a result of economic globalization and reductions in barriers to trade and that, as a result, enforcement of U.S. antitrust and competition laws by U.S. consumers alone may not sufficiently deter international cartels. *Id.* at 11-12.[5]

Defendants respond to Class Plaintiff's arguments in support of its proposed *cy pres* award by again asserting that the Center's goal of ensuring enforcement of foreign antitrust laws is inappropriate because the class in this case was limited to U.S. consumers. Defs' Reply at 2-3. Defendants further argue that such consumers cannot benefit from the enforcement of laws that are outside this Court's jurisdiction and regulate purely foreign harm. *Id.* at 3-4. However, the Court concludes that Class Plaintiff convincingly rebuts this argument by showing that international anticompetitive cartels, such as the one alleged to exist in the instant case, may harm U.S. consumers and may not be sufficiently deterred by U.S. antitrust laws alone. *See* Cl.

---

[5] Class Plaintiff also notes that efforts are emerging in Europe and elsewhere to learn from U.S. antitrust laws and attempt to harness private litigation as a tool for antitrust enforcement, and that these emerging efforts present opportunities for study and collaboration. Cl. Pl.'s Mem. re: *Cy Pres* Award at 13-15.

Pl.'s Mem. re: *Cy Pres* Award at 11-12.  Similarly, Defendants argue that Class Plaintiff's proposed *cy pres* recipient is not sufficiently tailored to the underlying lawsuit in this action because, as they describe that lawsuit, it concerned specialty chemicals rather than antitrust law. *See* Defs' Reply at 4-5.  However, Class Plaintiff correctly notes that the underlying lawsuit at issue here involved a multinational cartel to fix prices.  The Court thus finds that Class Plaintiff's proposed *cy pres* recipient is closely tailored to the nature of the underlying lawsuit, even though it does not relate to the specific subject of the alleged price-fixing.

Finally, Defendants argue that case law demonstrates that a *cy pres* distribution to the Center to promote antitrust enforcement is unnecessary.  *See* Defs' Reply at 6-7 (citing *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir. 1984); *Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 496-97 (7th Cir. 1989)).  Defendants are correct that the *Folding Carton* court rejected a *cy pres* distribution that would have supported research and study related to antitrust litigation and law.[6]  However, as Class Plaintiff points out in its Reply, the *Folding Carton* litigation occurred in the early 1980s, when voluminous research into domestic antitrust law had already been conducted, such that an additional foundation to study such issues was unnecessary.  Cl. Pl.'s Reply at 3 (citing *In re Folding Carton*, 744 F.2d at 1254-55).  In contrast, Class Plaintiff offers substantial evidence – including the Declaration of Robert Anderson, Counsellor in the Secretariat of the World Trade Organization – that there are currently "a

---

[6] Defendants also rely on *Schwartz*, in which the court rejected a *cy pres* distribution to a student legal clinic at the University of Pennsylvania law school because it was not necessary to promote the policy of U.S. antitrust law.  Def.'s Reply at 6 (citing *Schwartz*, 362 F. Supp. 2d at 577).  However, as Class Plaintiff notes in its Reply, "the proposed [C]enter's mission is not to fund a typical antitrust student clinic that engages in the representation of clients."  Cl. Pl.'s Reply at 5.  As such, Defendants' reliance on *Schwartz* is inapposite.

significant number of emerging issues concerning the role of antitrust/competition law in a new globalizing world that merit further study." Cl. Pl.'s Reply at 3; Ex. 1 (7/6/07 Anderson Decl. ¶¶ 3-6). Class Plaintiff thus successfully demonstrates the relevance and possible import of its proposed *cy pres* recipient.

In sum, exercising the Court's discretion to fashion *cy pres* awards, and considering the objectives of the Sherman Act, the nature of the underlying suit, the interests of the class members, and the geographic scope of this case, *see Schwartz*, 362 F. Supp. 2d at 576; *In re Airline Ticket Litig.*, 307 F.3d at 682, the Court concludes that Class Plaintiff's proposed *cy pres* distribution of the Remaining Settlement Fund is appropriate.

## CONCLUSION

For the foregoing reasons, the Court shall grant Class Plaintiff's Motion for Leave to File a Reply memorandum regarding its proposed *cy pres* recipient. The Court shall also grant Class Plaintiff's Motion to Distribute and shall authorize *cy pres* distribution of the Remaining Settlement Fund to a newly created endowment fund at The George Washington University Law School that will be used to develop a Center for Competition Law, as described in Class Plaintiff's Memorandum in Support of its Proposed *Cy Pres* Award Recipient. An appropriate Order accompanies this Memorandum Opinion.

Date:  July 10, 2007

                                                  */s/*
                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge